1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   MARK A. WILLIAMS (Cal. Bar No. 239351)
4  Assistant United States Attorney
   Chief, Environmental and
5  Community Safety Crimes Section
   MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
6  Assistant United States Attorney
   Environmental and Community
7  Safety Crimes Section
   ALIX MCKENNA (Cal. Bar No. 295202)
8  Assistant United States Attorney
   General Crimes Section
9       12/1300 United States Courthouse
        312 North Spring Street
10      Los Angeles, California 90012
        Telephone: (213) 894-8644/6166
11      Facsimile: (213) 894-0141
        E-mail:   matthew.o'brien@usdoj.gov
12                alix.mckenna@usdoj.gov

13
   Attorneys for Plaintiff
14 UNITED STATES OF AMERICA

15              UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17 UNITED STATES OF AMERICA,          No. CR 2:23-cr-00169-MEMF

18          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                      MICHAEL BARZMAN
19              v.

20 MICHAEL BARZMAN,

21          Defendant.

22

23      1.   This constitutes the plea agreement between Michael Barzman

24 ("defendant") and the United States Attorney's Office for the Central

25 District of California ("the USAO") in the investigation of the

26 creation of forged paintings purporting to have been created by the

27 artist Jean-Michel Basquiat ("Basquiat") and subsequent

28 misrepresentations to federal agents concerning those paintings.

1  This agreement is limited to the USAO and cannot bind any other

2  federal, state, local, or foreign prosecuting, enforcement,

3  administrative, or regulatory authorities.

4                          DEFENDANT'S OBLIGATIONS

5       2.   Defendant agrees to:

6            a.   At the earliest opportunity requested by the USAO and

7  provided by the Court, appear and plead guilty to the single-count

8  information in the form attached to this agreement as Exhibit A or a

9  substantially similar form, which charges defendant with making false

10  statements to a government agency, in violation of 18 U.S.C.

11  § 1001(a)(2).

12           b.   Not contest facts agreed to in this agreement.

13           c.   Abide by all agreements regarding sentencing contained

14  in this agreement.

15           d.   Appear for all court appearances, surrender as ordered

16  for service of sentence, obey all conditions of any bond, and obey

17  any other ongoing court order in this matter.

18           e.   Not commit any crime; however, offenses that would be

19  excluded for sentencing purposes under United States Sentencing

20  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

21  within the scope of this agreement.

22           f.   Be truthful at all times with the United States

23  Probation and Pretrial Services Office and the Court.

24           g.   Pay the applicable special assessment at or before the

25  time of sentencing unless defendant has demonstrated a lack of

26  ability to pay such assessments.

27           h.   Give up the right to indictment by a grand jury and,

28  at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with making false statements to a government agency, in violation of 18 U.S.C. § 1001(a)(2).

## THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1.

## NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in the information, that is, making false statements to a government agency, in violation of 18 U.S.C. § 1001(a)(2), the following must be true: first, defendant made a false statement; second, the statement was made in a matter within the jurisdiction of the FBI; third, defendant acted willfully, that is, defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and fourth, the statement was material to the activities or decisions of the FBI, that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

PENALTIES

5.     Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1001(a)(2) is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.     Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.     Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

9.    Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

1    On or about August 18, 2022, and October 13, 2022, in Los
2  Angeles County, within the Central District of California, defendant
3  knowingly and willfully made false statements to the FBI.  The
4  statements were made in a matter within the jurisdiction of the FBI.
5  Defendant made the statements deliberately with knowledge that the
6  statements were untrue and that defendant's conduct was unlawful.
7  Further, the statements were material to the activities and decisions
8  of the FBI and were capable of influencing the agency's decisions and
9  activities.

10                 <u>Creation of Fake Jean-Michel Basquiat Paintings</u>

11    In approximately 2012, defendant and an associate, J.F., formed
12  a plan to create drawings and paintings in the style of celebrated
13  painter, Jean-Michel Basquiat, and market the artworks for sale as if
14  they were authentic works by the artist.  Defendant and J.F. worked
15  together to create a series of paintings and drawings designed to
16  look like works by Basquiat ("the Fraudulent Paintings").  J.F. spent
17  a maximum of 30 minutes on each image and as little as five minutes
18  on others, and then gave them to defendant to sell on eBay.
19  Defendant and J.F. agreed to split the money that they made from
20  selling the Fraudulent Paintings.  J.F. and defendant created
21  approximately 20-30 artworks by using various art materials to create
22  colorful images on cardboard.  After finishing the images, defendant
23  and J.F. placed them outdoors to expose them to the elements and thus
24  create an aged appearance consistent with works made in the 1980's
25  when Basquiat was painting.  Defendant then sold the works and gave
26  half of the profits to J.F.
27  //

28

1   The Fraudulent Paintings created by J.F. and/or defendant

2   included the following works:

  

  

  

<u>Invention of a False Provenance</u>

Provenance is the history of the ownership of a piece of

artwork, beginning with the hand of the artist and continuing to the

7

1  present owner of the artwork.  Establishing provenance is essential
2  in determining if a piece of artwork is authentic.

3       Provenance documentation can include invoices, gallery records,
4  gallery labels, or documentation from an artist's foundation, estate,
5  or authentication boards as examples.  Provenance records can also
6  include auction records and records of exhibitions of artwork at
7  museums and at other art exhibitions.  Exhibiting artwork at museums
8  adds to the authenticity of artwork.  Artwork purported to be by an
9  established artist with no provenance has less value than artwork by
10 the same established artist which has an established provenance.

11      In 2012, during the time that defendant was creating the
12 Fraudulent Paintings, he also worked as an auctioneer and ran a
13 business called Mike Barzman Auctions that focused on purchasing and
14 reselling the contents of unpaid storage units.  Defendant purchased
15 the contents of a unit previously rented by a well-known
16 screenwriter, Thaddeus Mumford Jr. ("Mumford").

17      Defendant used the acquisition of Mumford's stored items to
18 create a false provenance for the Fraudulent Paintings.  Defendant
19 claimed that the Fraudulent Paintings were found inside Mumford's
20 storage unit along with Mumford's other possessions.  To bolster this
21 false provenance, defendant gave buyers of the Fraudulent Paintings a
22 ticket stub from a storage unit with locker number "2125," and told
23 them that it had come from Mumford's locker.  Defendant also provided
24 a group of buyers with a notarized document affirming that the
25 Fraudulent Paintings came from Mumford's storage unit.

26                    Exhibition at the Orlando Museum of Art
27      On February 12, 2022, the Orlando Museum of Art opened an
28 exhibit entitled "Heroes & Monsters: Jean-Michel Basquiat, the

Thaddeus Mumford, Jr. Venice Collection" featuring 25 paintings purportedly by Basquiat.  Most of the featured works had, in fact, been created by defendant and J.F.  Defendant was aware of the exhibition and knew that he had created or co-created the majority of the featured works.  The exhibition catalogue included an essay stating that some of the featured pieces had previously been kept in Mumford's storage-locker.  The essay also referenced a sworn statement from a "small-time Los Angeles auctioneer" – defendant – stating that defendant had purchased the contents of Mumford's locker, including paintings on cardboard.

<u>June 14, 2022, Interview and False Statements</u>

On June 14, 2022, FBI Special Agents interviewed defendant at his home in Los Angeles, within the Central District of California. In the beginning of the interview, the agents cautioned defendant to be honest because lying to an FBI agent can constitute a crime.

Defendant told the agents that he had previously been in the business of buying the contents of storage-lockers.  He claimed that approximately ten years prior to the interview, while working in the storage-locker purchasing business, he came across art that he thought "might have been" made by Basquiat, which he sold to "a couple of groups of people."  Defendant told the agents that he sold the works as "in the manner of" Basquiat after seeking opinions on their authenticity and hearing from people that the works didn't look right or would be very hard to authenticate.  Defendant stated that he had doubts as to the authenticity of the works but never told agents that he knew they were inauthentic.

Defendant told the agents that he had purchased the contents of a storage unit belonging to Mumford, but that he did not know whether

the artwork came from that unit and "never even thought that." Defendant told the agents that members of a group of buyers that included T.B., W.F., and L.M. contacted him for years and repeatedly asked him to sign paperwork saying that the works came from the Mumford storage unit.  Defendant told the agents that the buyers offered him $5,000 to sign documents authenticating the works.

Agents showed defendant a notarized declaration signed by defendant stating that the paintings came from Mumford's storage unit.  Defendant claimed that he did not remember signing the document but said he might have.

At the time of the interview, defendant knew that Basquiat did not create the Fraudulent Paintings.  Further, he knew that it was a lie to tell FBI agents that the works "might have been" by Basquiat, because he and J.F. had actually created them.  Defendant knew that his statements to the contrary were untruthful.

<u>August 18, 2022, Interview and False Statements</u>

On August 18, 2022, FBI Special Agents interviewed defendant at the United States Attorney's Office in Los Angeles, within the Central District of California.  At the beginning of the interview, defendant was advised that if he made a knowing and willful false statement, it could subject him to criminal prosecution.

Defendant described selling paintings purportedly by Basquiat. When asked where the fake Basquiat paintings came from, defendant responded, "I don't know, they could have come from a storage-locker. I think at the time, I was like almost 90 percent sure they did." When asked where he had acquired the paintings, defendant responded "either a storage-locker, an estate sale, a clear out, I don't know, I had a lot of stuff coming in, so I don't know."  Defendant was

asked, "Did somebody paint them for you?"  Defendant responded, "No."
Defendant was asked whether he painted the works himself.  He
responded, "No."

        At the time of the interview, defendant knew that he and J.F.
had created the paintings and that his statements to the contrary
were untruthful.  His statement that he did not make the paintings or
have someone make them for him were material to the activities and
decisions of the FBI and were capable of influencing the agency's
decisions and activities.

### October 13, 2022, Interview and False Statements

        On October 13, 2022, FBI Special Agents interviewed defendant at
the United States Attorney's Office in Los Angeles, within the
Central District of California.  In the beginning of the interview,
defendant was again advised that lying to the interviewing agents
would constitute a crime.  Defendant admitted that he knew "it was a
lie" that the artwork came from Mumford's storage-locker.
Nevertheless, defendant still denied making the Fraudulent Paintings.

        Agents showed defendant a label on the back of one of the
Fraudulent Paintings.  The painting was one of the items that
defendant had sold, and that was later displayed in the Orlando
Museum of Art.  Agents pointed out that a shipping label bearing
defendant's name and former address was attached to the cardboard on
which the painting had been created.  There was dried paint on top of
the shipping label.  Defendant claimed that he had never seen the
work and said that he had no idea how a shipping label bearing his
information got on the back of it.  Defendant denied making the art
and claimed that he could not think of anyone else who could have
been involved in its creation.

At the time of the interview, defendant knew that he had created the Fraudulent Paintings, that he and J.F. had fabricated a series of Fraudulent Paintings together, and that a label bearing his name was on the artwork because the cardboard had been in his possession prior to the painting's creation.  His statements that he did not make the paintings or have someone make them for him were material to the activities and decisions of the FBI and were capable of influencing the agency's decisions and activities.

### October 21, 2022, Interview and Admissions

On October 21, 2022, FBI Special Agents interviewed defendant at the United States Attorney's Office in Los Angeles, within the Central District of California.  Defendant admitted that he "lied about the entire thing" and that he "created the pieces" with his friend, J.F.  Defendant admitted to signing a notarized document for a group of buyers, including L.M. and T.B., stating that the Fraudulent Paintings came from Mumford's storage unit bearing unit number 2125.  He told agents that he signed the document and had it notarized after T.B. offered him $10,000 or $15,000 to sign the paperwork.  Defendant said that he was never paid.

Defendant told agents that in approximately 2017 or 2018, he informed L.M. that he could not prove the Mumford provenance story, and L.M. reacted with anger.

### SENTENCING FACTORS

10.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:          6          U.S.S.G. § 2B1.1(a)(2)

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

12. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14. Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

13

1         b.   The right to a speedy and public trial by jury.

2         c.   The right to be represented by counsel – and if

3 necessary have the Court appoint counsel - at trial.  Defendant

4 understands, however, that, defendant retains the right to be

5 represented by counsel – and if necessary have the Court appoint

6 counsel – at every other stage of the proceeding.

7         d.   The right to be presumed innocent and to have the

8 burden of proof placed on the government to prove defendant guilty

9 beyond a reasonable doubt.

10        e.   The right to confront and cross-examine witnesses

11 against defendant.

12        f.   The right to testify and to present evidence in

13 opposition to the charges, including the right to compel the

14 attendance of witnesses to testify.

15        g.   The right not to be compelled to testify, and, if

16 defendant chose not to testify or present evidence, to have that

17 choice not be used against defendant.

18        h.   Any and all rights to pursue any affirmative defenses,

19 Fourth Amendment or Fifth Amendment claims, and other pretrial

20 motions that have been filed or could be filed.

21 <u>WAIVER OF APPEAL OF CONVICTION</u>

22  15.  Defendant understands that, with the exception of an appeal

23 based on a claim that defendant's guilty plea was involuntary, by

24 pleading guilty defendant is waiving and giving up any right to

25 appeal defendant's conviction on the offense to which defendant is

26 pleading guilty.  Defendant understands that this waiver includes,

27 but is not limited to, arguments that the statute to which defendant

28 is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

16.  Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction below the statutory maximum sentence, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

17.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

18.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

20.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

21.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required

16

certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such

statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

23. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

26.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//
//
//
//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*Matthew O'Brien*                                      April 10, 2023
_____                     _____
ALIX MCKENNA                                          Date
MATTHEW W. O'BRIEN
MARK A. WILLIAMS
Assistant United States Attorneys



_____                     _____
MICHAEL BARZMAN                                       Date
Defendant


/s/ (via email authorization)                          March 16, 2023
_____                     _____
JOEL KOURY                                            Date
Attorney for Defendant MICHAEL
BARZMAN


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney


_____          _____
ALIX MCKENNA                               Date
MATTHEW W. O'BRIEN
MARK A. WILLIAMS
Assistant United States Attorneys


_____          3 / 16 / 2023
MICHAEL BARZMAN                            Date
Defendant


_____          _____
Joel C. Koury                              Date
Attorney for Defendant MICHAEL
BARZMAN


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has

1  advised me of my rights, of possible pretrial motions that might be
2  filed, of possible defenses that might be asserted either prior to or
3  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
4  of relevant Sentencing Guidelines provisions, and of the consequences
5  of entering into this agreement.  No promises, inducements, or
6  representations of any kind have been made to me other than those
7  contained in this agreement.  No one has threatened or forced me in
8  any way to enter into this agreement.  I am satisfied with the
9  representation of my attorney in this matter, and I am pleading
10  guilty because I am guilty of the charge and wish to take advantage
11  of the promises set forth in this agreement, and not for any other
12  reason.

13
14  _____        3/16/2023
    MICHAEL BARZMAN                          _____
    Defendant                                Date
15
16
17
18              CERTIFICATION OF DEFENDANT'S ATTORNEY
19       I am Michael Barzman's attorney.  I have carefully and
20  thoroughly discussed every part of this agreement with my client.
21  Further, I have fully advised my client of his rights, of possible
22  pretrial motions that might be filed, of possible defenses that might
23  be asserted either prior to or at trial, of the sentencing factors
24  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
25  provisions, and of the consequences of entering into this agreement.
26  To my knowledge: no promises, inducements, or representations of any
27  kind have been made to my client other than those contained in this
28  agreement; no one has threatened or forced my client in any way to

                              21

enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

/s/ (via email authorization)                         March 16, 2023
_____     _____
JOEL KOURY                                           Date
Attorney for Defendant MICHAEL
BARZMAN

Exhibit A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,           No.

11            Plaintiff,                 I N F O R M A T I O N

12                 v.                    [18 U.S.C. § 1001(a)(2): Making
                                         False Statements]
13   MICHAEL BARZMAN,

14            Defendant.

15

16        The United States Attorney charges:

17                       INTRODUCTORY ALLEGATIONS

18        At times relevant to this Information:

19        1.   In approximately 2012, defendant and an associate,

20   J.F., formed a plan to create drawings and paintings in the

21   style of celebrated painter, Jean-Michel Basquiat, and market

22   the artworks for sale as if they were authentic works by the

23   artist.

24        2.   Defendant and J.F. worked together to create a series

25   of paintings and drawings designed to look like works by

26   Basquiat ("the Fraudulent Paintings").  J.F. and defendant

27   created approximately 20-30 artworks by using various art

28   materials to create colorful images on cardboard.

                                    1

3.     Defendant then sold the Fraudulent Paintings and gave a share of the profits to J.F.

4.     These Introductory Allegations are incorporated into the following count of this Information.

[18 U.S.C. § 1001(a)(2)]

Between on or about August 18, 2022, and October 13, 2022, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the Federal Bureau of Investigation, defendant MICHAEL BARZMAN knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to the FBI for the purpose of influencing an FBI investigation in the Central District of California.  Specifically:

1.     When asked whether someone painted the Fraudulent Paintings for Barzman, he responded "no."  When asked whether he painted them himself, defendant responded "no."  In truth and in fact, defendant knew that he and his friend, J.F. made the Fraudulent Paintings.

2.     Special Agents showed defendant one of the Fraudulent Paintings, which bore a shipping label with his name on it. Defendant told the Special Agents that he had never seen the

//
//
//
//
//
//
//

2

1 | work before.  In truth and in fact, defendant knew that he
2 | and/or his friend J.F. made the work.
3 |                                E. MARTIN ESTRADA
  |                                United States Attorney
4 |
5 |
6 |                                MACK E. JENKINS
  |                                Assistant United States Attorney
7 |                                Chief, Criminal Division
8 |                                MARK A. WILLIAMS
  |                                Assistant United States Attorney
9 |                                Chief, Environmental and
  |                                Community Safety Crimes Section
10 |                               MATTHEW W.O'BRIEN
   |                               Assistant United States Attorney
11 |                               General Crimes Section
12 |                               ALIX MCKENNA
   |                               Assistant United States Attorney
13 |                               General Crimes Section
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

**CERTIFICATE OF SERVICE**

I, **Catherine Wilkinson**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **Plea Agreement**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☒ Via email, as follows:

☐ By Federal Express, as follows:

**jckoury@aol.com**

This Certificate is executed on **April 11, 2023**, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

*Catherine Wilkinson*
Catherine Wilkinson
Legal Assistant